IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 17-553 |
| HERMAN ROSARIO a.k.a. "German Rosario," | : |
| YATSKA MELENDEZ | : |

**MEMORANDUM**

**SURRICK, J.**                                                   **FEBRUARY | 3 , 2018**

Presently before the Court are Defendants' Motions to Suppress Physical Evidence.

(ECF Nos. 33, 34, 47.) For the following reasons, Defendants' Motions will be **DENIED**.

## I.     BACKGROUND

On October 11, 2017, a grand jury returned an Indictment charging Defendants Herman

Rosario and Yatska Melendez with conspiring to distribute the controlled substances heroin,

crack cocaine, fentanyl, and tramadol, in violation of 21 U.S.C. §§ 841, 846. (Indictment, ECF

No. 1, Count One.) Rosario was also charged with possession with intent to distribute these

controlled substances (Count Two), possession of a firearm in furtherance of a drug trafficking

crime (Count Three), and possession of a firearm by a convicted felon (Count Four). (*Id.*)

Rosario and Melendez now move to suppress all evidence seized at 1611 South 28th Street in

Philadelphia, Pennsylvania, pursuant to a search warrant issued by a state magistrate.

Defendants contend that the affidavit upon which the warrant application was based did not

contain enough information to support a finding of probable cause.

## A.    Factual Background

Although drugs, paraphernalia, and weapons were recovered from three separate houses pursuant to different search warrants in this case, Defendants only challenge the sufficiency of the application for search warrant and affidavit issued for 1611 South 28th Street. (Rosario Mot., Ex. A, ECF No. 33.)

On July 13, 2017, Philadelphia Police Officer Neil Carr filed an affidavit of probable cause in support of a search and seizure warrant. In the affidavit, Carr declared his belief that firearms, narcotics, and/or narcotics proceeds were being stored and/or sold from 1611 South 28th Street in Philadelphia, Pennsylvania. (*Id.*)

The affidavit provided that in the month of June 2017, the Philadelphia Police Department Narcotics Unit conducted an investigation into the illegal sale of narcotics in the area of Jasper and Wishart Streets. (*Id.*) As part of the investigation, a confidential informant working with the police purchased heroin in this area on June 14, June 21, and June 26. (*Id.*) The investigation established that a male identified as Defendant Herman Rosario was supplying narcotics to a woman described as an "H/F" (Hispanic female) at 1908 East Wishart Street, and that this woman was providing street dealers in the area with these narcotics. (*Id.*) On several occasions, Rosario was seen receiving sums of cash from the woman and then driving to 2863 North 4th Street, using "various vehicles" to do so. (*Id.*) Rosario was also seen on multiple occasions leaving 2863 North 4th Street and going to 1908 East Wishart Street, where he would hand a bag believed to contain narcotics to the woman. (*Id.*)

The affidavit states that on June 28, 2017, a search warrant for 1908 East Wishart Street was executed and resulted in the confiscation of 24 capsules of heroin and $79. (*Id.*) It also describes the execution of a search warrant at 2863 North 4th Street, also on June 28, where

police confiscated 251 packets of cocaine, 699 grams of marijuana, $18,999, and a .45 caliber handgun hidden in a bathroom wall. (*Id.*) In addition, police found two pictures of Rosario at the 2863 North 4th Street location. (*Id.*) Rosario was not present at either location during the execution of the warrants. (*Id.*)

It appears from the affidavit that Officer Carr's Narcotics Unit was working in conjunction with a DEA Task Force and was also in communication with the "Attorney General's Gun Violence Task Force." (*Id.*) Following the execution of the search warrants at the North Philadelphia locations, "information was received" that Rosario was residing at 1611 South 28th Street in South Philadelphia and that Rosario was using a gray Mazda sedan. (*Id.*)

On July 5, an officer from the DEA Task Force observed Rosario driving the grey Mazda and began to follow him. (*Id.*) The DEA officer followed Rosario to 1611 South 28th Street and saw him park the Mazda in front of that residence and then go inside. (*Id.*)

Two days later on July 7, Officer Carr and another officer set up surveillance of 1611 South 28th Street, where they again observed the Mazda parked in front of that address and saw Rosario come out of the residence two separate times to talk on a cell phone. (*Id.*)

On July 10, 11, and 12, Special Agent Mangold of the Attorney General's Gun Violence Task Force conducted a separate surveillance of 1611 South 28th Street. [1] (*Id.*) On each of these three days, Agent Mangold saw Rosario leaving the residence and driving the Mazda. (*Id.*)

The concluding paragraph of the affidavit states that Officer Carr believed that there was probable cause to search 1611 South 28th Street for narcotics, narcotics proceeds, and firearms

---

[1] It appears from the affidavit that the Gun Violence Task Force received the information that Rosario was staying at 1611 South 28th Street independently. (Rosario Mot., Ex. A ¶ 4 ("Senior Special Agent Mangold #767 of the Attorney General's Gun Violence Task Force received information that Rosario was residing at 1611 S 28th St *as well*") (emphasis added))).

3

based on his experience as a police officer for over 20 years and a narcotics officer for over 13 years and based upon the information contained in the affidavit. (*Id.*)

Based on this affidavit, the magistrate issued a warrant to search 1611 South 28th Street. (Gov't Resp. ¶ 4 ECF No. 36.) On July 14, 2017, a DEA search team and the Philadelphia Police Department executed the search warrant at 1611 South 28th Street. (Gov't Resp. ¶¶ 2-4.) The agents seized over 650 grams of heroin, 380 grams of a mixture of heroin, fentanyl and tramadol, 38 grams of a mixture of heroin and fentanyl, and 44 grams of crack cocaine in the residence. (*Id.*) These drugs were found in various packets stamped with brand names, clear plastic bags and wraps, and glass jars. (*Id.*) Agents also found drug packaging and drug-dealing paraphernalia, including thousands of unused drug capsules, plastic bags, rubber bands, a grinder, a scale, a strainer, and a spoon. (*Id.*) Agents recovered United States currency stored in multiple bags, cell phones, a tablet device, mail addressed to Yatska Melendez at 1908 East Wishart Street, and a loaded 9mm Glock handgun. (*Id.*) Rosario and Melendez were both present at the 1611 South 28th Street location during the execution of the search warrant, along with Melendez's two young children, and it is believed that Melendez and her children had spent the night in the home prior to the execution of the warrant. (*Id.*)

## B. Procedural Background

Defendant Rosario filed a Motion to Suppress on December 26, 2017. (Rosario Mot.) Defendant Melendez filed a Motion to Suppress on December 27, 2017. (Melendez Mot., ECF No. 34.) The Government filed a Response to both motions on January 10, 2018. (Gov't Resp.) On January 18, 2018, a hearing was held on the Motions. (Jan. 18 Hr'g Tr. (on file with Court).) At the hearing, Defendant Rosario dismissed his counsel and retained new counsel, who

4

subsequently filed a supplemental Motion to Suppress on January 23, 2018. (Rosario Supp. Mot., ECF No. 47.)

## III. DISCUSSION

### A. Standing

Addressing first the issue of Fourth Amendment standing, the Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. In order to assure this guarantee, evidence obtained in violation of the Fourth Amendment may be excluded at trial. *United States v. Calandra*, 414 U.S. 338, 347 (1974). However, a defendant may only get the benefit of the Fourth Amendment's exclusionary rule if the defendant's own Fourth Amendment rights were violated by the challenged search or seizure. *Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 132-34 (1978)). Proponents of a motion to suppress bear the burden of proving not only that the search was illegal, but also that they had a legitimate expectation of privacy in the place searched. *Stearn*, 597 F.3d at 551.

Residents of a property have a legitimate expectation of privacy in their residence. *United States v. White*, 748 F.3d 507, 511 (3d Cir. 2011) ("The Fourth Amendment draws 'a firm line at the entrance to the house'" (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980))). Overnight guests also have a legitimate expectation of privacy in their host's home. *Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990).

Here, both Rosario and Melendez have standing to assert Fourth Amendment violations. Rosario was the occupant of 1611 South 28th Street, as set forth in the search warrant affidavit. While it appears that Melendez resided at 1908 East Wishart Street, the Government concedes in its Response that she appears to have spent the night in Rosario's home at 1611 South 28th

5

Street, as she was present in the home with her children during the early-morning hours when the search warrant was executed. Law enforcement surveillance of the home does not point to the contrary. (Gov't Resp. ¶ 5.) In addition, the Government does not argue that either Defendant lacks standing. Accordingly, both Rosario and Melendez have standing to seek suppression of the evidence seized from 1611 South 28th Street.

## B. The Warrant

### i. *Legal Background*

With a few exceptions, the Fourth Amendment requires law enforcement officers to obtain a search warrant supported by probable cause before they may lawfully search a person's home. *United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton*, 445 U.S. at 586).

Where, as here, a magistrate has made a probable cause determination and issued a search warrant, the duty of the reviewing court is *not* to determine whether there was in fact probable cause to issue the warrant, but whether the magistrate had a substantial basis for concluding that probable cause existed. *Stearn*, 597 F.3d at 554 (citing *Illinois v. Gates*, 462 U.S. 213, 236-39 (1983). If the court finds that there was a substantial basis to support the magistrate's probable cause finding, it must uphold that finding. *Id.* This is not a license to merely rubber-stamp the magistrate's conclusions, but is instead a process guided by the deference accorded to warrants in close-call cases. *Id.* (citation and quotation marks omitted). The reviewing court's circumscribed duty means it may only consider those facts that were before the magistrate, *i.e.*, the facts contained in the affidavit of probable cause. *United States v. Herrera*, No. 15-22, 2015 WL 3536616, at *4 (E.D. Pa. June 5, 2015) (citing *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)).

6

Probable cause has no set definition. It is best conceptualized as a fluid concept determined by the totality of the circumstances in a given context. *Id.* In the context we have here, where a magistrate judge has been presented with an application for a search warrant, the magistrate may find probable cause if the totality of the circumstances set forth in the affidavit supports "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *Gates*, 462 U.S. at 238)). This is not a formulaic calculation, but instead should be a practical, common-sense decision. *Stearn*, 597 F.3d at 554.

It is important to note that a magistrate may issue a search warrant even where the affidavit does not provide *direct* evidence linking the crime with the place to be searched. *Id.* That isn't to say that no nexus must be shown between the place to be searched and the evidence sought; it simply recognizes that this nexus (*i.e.*, probable cause), "can be, and often is, *inferred* from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'" *Id.* (quoting *Jones*, 994 F.2d at 1056) (emphasis added).

This is particularly true when the crime under investigation is drug distribution. The Third Circuit has repeatedly held that

> evidence associated with drug dealing needs to be stored somewhere, and . . . a dealer will have the opportunity to conceal it in his home . . . and could logically conclude that his residence is the best, and probably the only, location to store items such as . . . cash, . . . guns, . . . and large quantities of drugs to be sold.

*Stearn*, 597 F.3d at 558 (quoting *United States v. Whitner*, 219 F.3d 289, 298 (3d Cir. 2000)); *see also Burton*, 288 F.3d at 104 ("[I]t is a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences[.]"); *Hodge*, 246 F.3d at 306 ("It is reasonable

7

to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home.").

The Third Circuit has articulated a test for the exact circumstances described here. When the crime under investigation is drug distribution, an issuing judge may infer that a suspected drug dealer is storing evidence of his drug crimes in his residence if three preliminary premises are supported by evidence: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities. *Stearn*, 597 F.3d at 559. That third factor essentially re-phrases and narrows the "nexus" inquiry into the question, what type of evidence may allow the inference that the home contains contraband?

The mere fact that a suspect is thought to be a drug dealer by authorities is insufficient to support the inference that contraband may be found in the suspect's home. *Id.* (citing *Burton*, 288 F.3d at 104). Instead, the magistrate may apply commonsense and look to see if circumstances support the inference. The Third Circuit has devised a non-exhaustive list of factors, the existence of which help to establish the required nexus between a suspect's drug-dealing activities and his home. *Id.* at 559. These factors include: (1) evidence of large-scale drug dealing operations; (2) probable cause to arrest the suspect on drug-related charges; (3) the proximity of the suspect's residence to the location of criminal activity; and (4) the conclusions of experienced officers regarding where evidence of a crime is likely to be found. *Id.* at 559-60.

These factors are not necessary requirements, and the Third Circuit has stressed the practical, non-technical process for determining probable cause. For example, where a suspected drug dealer has ready access to private places outside his home that could serve as hiding places for contraband, a magistrate may still infer probable cause to search the suspect's home, so long

8

as the evidence described in the affidavit establishes the required nexus between the home and the alleged drug dealing. *Id.* at 560.

## ii. *Application*

Here, the affidavit prepared by Officer Carr provided the issuing magistrate with a substantial basis to find probable cause to search 1611 South 28th Street for evidence related to Rosario's alleged drug-dealing crimes.

*First*, the affidavit provided support for the premise that Rosario was actually a drug dealer. The affidavit clearly establishes that the authorities in this case had been surveilling an ongoing drug-dealing operation during the month of June 2017 at the 1900 block of East Wishart Street. It states that a confidential informant working with the police purchased heroin on that block on June 14, 21, and 26. It also states that on several occasions the officers had observed a woman giving cash to Rosario. Rosario was observed on several occasions driving from those meetings to 2863 North 4th Street, and he used different vehicles to do so. Further, Rosario was seen multiple times leaving the 2863 location, going to the 1908 location, and handing a bag believed to contain drugs to the same woman from whom he had received the cash. Finally, the affidavit informed the magistrate that on June 28, 2017, a search warrant was issued and executed at 1908 East Wishart Street, resulting in the seizure of 24 capsules of heroin and $79. A search warrant was also executed at 2863 North 4th Street, resulting in the seizure of 251 packets of cocaine, 699 grams of marijuana, $18,999 in cash, a .45 caliber gun hidden in the wall of a bathroom, and two photographs of Rosario. The information provided in the affidavit was sufficient to support the conclusion of the magistrate that Rosario was actually a drug dealer. *See, e.g., United States v. Suarez-Arzon*, 664 F. App'x 180, 182-83 (3d Cir. 2016) (finding the affidavit provided sufficient evidence to support inference that defendant was drug dealer based

9

on confidential informant statements that defendant was a "known heroin dealer" corroborated by police surveillance of defendant handling suspected drug paraphernalia, an attempt to flee from unmarked police cars, and officer's experienced conclusions).

*Second,* the affidavit provided support for the premise that 1611 South 28th Street was possessed by, or at least the domicile of, Rosario. The affidavit states that both the Narcotics Task Force and the Gun Violence Task Force received information that Rosario was "staying" and/or "residing" at 1611 South 28th Street and operating a gray Mazda sedan. This was corroborated by surveillance, with the affidavit stating that officers observed Rosario driving that Mazda, parking it in front of 1611 South 28th Street, and going into that address on July 5, 2017. Rosario was also seen going in and out of that location on July 7, all while the Mazda was parked directly in front of that residence. In addition, the affidavit states that Rosario was seen exiting the residence at 1611 South 28th Street on July 10, 11, and 12, and also driving the Mazda on those three days. Finally, while the search warrant application does list a "Suk Fan Wong" as the owner of the 1611 location "per realeste [sic] check," it goes on to list Herman Rosario as "Occupaat [sic]."

This information provided a sufficient basis to believe that Rosario was at the very least domiciled at 1611 South 28th Street. The affidavit provided direct evidence that Rosario was using that address and doing so in the manner of someone who was living there. Regardless of whether Rosario planned to make 1611 South 28th Street his long-term home, the evidence collected by the officers and sworn to in the affidavit supports the finding that Rosario was living there. The magistrate was informed that officers learned that Rosario was at the 1611 address. That information was corroborated by surveillance. Rosario was seen going in and out of the house and parking his car in front of the house for over a week. That is sufficient for a

10

magistrate to make a practical, commonsense decision that Rosario was domiciled at 1611 South 28th Street.

Defendants argue that the affidavit merely shows evidence of a temporary arrangement, and that a temporary living arrangement cannot support the test of sufficiency for a search warrant in this context. They argue that the affidavit doesn't show evidence that Rosario moved into the 1611 location from either of the North Philadelphia locations and that officers conducted no property investigation. This is incorrect. The affidavit states that a real estate check was performed. Moreover, the affidavit makes no representation as to Rosario *moving* to 1611. It simply provides evidence that he was living at that location.

The Third Circuit's test calls for the place to be searched to be "possessed by, or the domicile of, the dealer." *Stearn*, 579 F.3d at 559. A "domicile" may be defined as "the place where someone lives,"[2] or a fixed permanent residence.[3] However, if a random person is observed entering and exiting a house or apartment on a regular basis and parking their car in front of that residence over the course of 8 days, it is perfectly logical to assume that that person is living there. At the very least, there was enough evidence in the affidavit for the magistrate to conclude that 1611 South 28th Street was the place where Rosario was staying, *i.e.* his domicile. *See, e.g.*, *Burton*, 288 F.3d at 104-05 (finding "ample evidence" that searched location was defendant's "residence" in large part because defendant parked in close proximity to the residence after leaving scene of the alleged drug-dealing).

*Third*, the affidavit provided sufficient evidence for the magistrate to reasonably believe that contraband or evidence linked to Rosario's alleged drug-dealing would be found at 1611

---

[2] *Domicile*, Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/domicile (last visited Feb. 2, 2018).
[3] *Friedrich v. Davis*. 767 F.3d 374, 377 (3d Cir. 2014).

11

South 28th Street. The affidavit establishes many of the factors that the Third Circuit has indicated would permit a magistrate to infer such a connection. The affidavit provided clear evidence of a large-scale drug operation: the use of two different residences in North Philadelphia, the use of multiple vehicles, surveillance showing Rosario making deliveries to a woman and receiving cash from that woman at one of those residences, the use of multiple street dealers, the purchase of heroin by a confidential informant on three separate occasions, a sustained operating period of at least two weeks, and last but certainly not least, the searches of those North Philadelphia residences, which yielded large amounts of cocaine and marijuana, capsules of heroin, $18,999 in cash, and a gun hidden in the wall near this substantial stash of contraband. *See Stearn*, 597 F.3d at 567-70 (finding that defendant's use of multiple stash houses storing large quantities of different types of drugs, drug paraphernalia, and handguns provided compelling evidence of a large-scale operation).

The affidavit also contained the conclusions of Officer Carr who swore that he believed there would be narcotics, narcotics proceeds, and/or weapons found at 1611 South 28th Street. As detailed in the affidavit, he did so based on the surveillance and searches of the North Philadelphia houses and the surveillance of 1611 South 28th Street, and based upon his many years of experience as a narcotics officer.

Defendants raise the issue of proximity, arguing that the evidence should be suppressed because of the significant distance between 1611 South 28th Street and the North Philadelphia residences, calling them "two distant regions" and declaring that they are 7 to 12 miles and a "half hour drive" apart, depending on the route taken. (Hr'g Tr. ¶¶ 13, 15.)

Defendants' distance argument is unpersuasive. In fact, all of these locations were relatively close to each other. *See, e.g., Hodge*, 246 F.3d at 307 (finding that defendant's home

12

was a "more likely repository" of his drug-dealing paraphernalia because it was in the "same city" as the location of where he was supposed to deliver drugs). The affidavit established that Rosario had access to multiple cars and used them regularly in the course of his drug dealing to transport drugs and money between various locations. All of these locations were in the same city. Rosario would not have had to cross any bridges or use toll roads where security cameras could be a problem. It is silly to call South Philadelphia and North Philadelphia "distant regions." Depending on the route, one can make the trip between 1611 South 28th Street and 2863 North 4th Street in as little as 20 minutes by car depending on the time of day.[4] Even if we accept Defendants' proffered travel-time, a 30-minute drive to make a delivery is no great impediment. When one is running an operation involving significant cash and drugs, there is certainly an incentive to put up with the inconvenience of Center City traffic.

Finally, Defendants argue that because surveillance of 1611 South 28th Street did not result in any observations of direct criminal activity, the link between the North Philadelphia drug dealing and the 1611 South 28th Street address was not supported by the affidavit.

Again, we disagree. The drugs being delivered by Rosario in North Philadelphia had to be coming from somewhere, and it again makes sense to reasonably believe that those drugs and their proceeds were being stored in a private residence used by Rosario. Defendants argue that it was unlikely that Rosario would be storing drugs at his house because he must have known that he was a wanted man after the raids on the North Philadelphia homes. This argument actually supports the inference that there would be drugs at the 1611 South 28th Street residence: If

---

[4] *See, e.g.*, Driving Directions from 1611 South 28th Street, Philadelphia, PA 19145 to 2863 North 4th Street, Philadelphia, PA 19133, Google Maps, https://www.google.com/maps/ (follow "Directions" hyperlink; then input addresses in respective starting point and destination point fields). Depending on the time of day, Google Maps estimates the travel time between 1611 South 28th Street and 2863 North 4th Street to be from as little as 18 minutes to as long as 45 minutes.

Rosario's drug locations had just been raided by the police, then Rosario would have been forced to keep whatever drugs and paraphernalia he still possessed in a secure location to which he still had access. In this case, that would have been where he was living.

Defendants' argument that no criminal activity was observed at 1611 South 28th Street disregards the purpose of the Third Circuit's test, which is designed to allow a magistrate to infer probable cause to search a residence from the totality of the circumstances when there is a lack of direct evidence.

Here, the totality of the circumstances provided in the affidavit supports the premises that Rosario was actually a drug dealer, that 1611 South 28th Street was Rosario's domicile, and that 1611 South 28th Street would contain contraband related to Rosario's drug-dealing activities. Accordingly, we find that the magistrate had a substantial basis for concluding that probable cause existed.

### C.    Good Faith Exception

Even if one were to somehow conclude that the magistrate here lacked a substantial basis for finding probable cause, the evidence obtained from the search of 1611 South 28th Street would be admissible under the "good faith exception" to the exclusionary rule.

The good faith exception attempts to balance the exclusionary rule's costs against its deterrent benefits by not excluding evidence where officers acted with an objectively reasonable belief that their conduct did not violate the Fourth Amendment. *Stearn*, 597 F.3d at 560 (citing *United States v. Leon*, 468 U.S. 897, 918 (1984)).

Ordinarily, if an officer obtains a search warrant and executes it with the good faith belief that he was acting in accord with the Fourth Amendment, a court should not suppress evidence seized under that warrant's authority even if that warrant is subsequently invalidated. *Id.* (citing

*United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)). However, if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," then the evidence would still be suppressed. *Id.*

The Third Circuit has identified four situations where this exception to the exception would come into play. An officer's reliance on a warrant is unreasonable and therefore does not trigger the good faith exception: (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *United States v. Zimmerman*, 277 F.3d 426, 436-37 (3d Cir. 2002).

Defendants argue that the affidavit was so lacking in indicia of probable cause that no officer could rely on the search warrant in good faith. They contend that the distance between the North and South Philadelphia locations was too great and that surveillance of Rosario at 1611 South 28th Street only showed benign activity. Therefore, they argue that no officer could have believed in good faith that the affidavit would support a finding of probable cause to search the 1611 South 28th Street location. We disagree.

The affidavit here described a large-scale drug operation of which Rosario was an integral part. It involved multiple locations and vehicles and large quantities of drugs, cash, and a gun. This information was gathered through weeks of surveillance, the use of a confidential informant, and the execution of two search warrants yielding contraband, proceeds, and a weapon. In addition, surveillance established that Rosario had access to and appeared to be

15

residing at 1611 South 28th Street. These circumstances all support a good faith belief that Rosario was a drug dealer living at 1611 South 28th Street and that contraband, proceeds, and weapons would likely be found there.

We are satisfied that a reasonable officer acting in good faith would believe that the warrant here was based on an affidavit that supported a finding of probable cause. *See Stearn*, 597 F.3d at 562-63 (finding affidavit linking locations to either drug activity or dealers supported good faith belief, and also noting that good faith analysis does not expect officers to engage in "detailed analysis of [] case law" for complex probable cause analysis); *see also Herrera,* 2015 WL 3536616, at \*7-8 (finding affidavit supported good faith belief where it contained information from confidential informant corroborated by investigation and surveillance).

Accordingly, we find that the warrant here was not based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Therefore, the evidence found at 1611 South 28th Street would be admissible under the good faith exception even if one were to conclude that the magistrate lacked a substantial basis to find probable cause to issue the search warrant.

## IV. CONCLUSION

For these reasons, Defendants' Motions to Suppress Physical Evidence will be denied. An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**

16

2/13/18 email: Perito Roberts Ausa